**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BETTY JACKSON, ) | CASE NO. 1:08-CV-0053 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | **MEMORANDUM OPINION** |
| Defendant. ) | **AND ORDER** |

Plaintiff Betty Jackson ("Plaintiff") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423 *et seq.* (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the Commissioner.

**I. Procedural History**

On March 15, 2005, Plaintiff applied for DIB and SSI, alleging a period of disability commencing May 1, 2004.  The Commissioner denied her claim initially and on reconsideration.  Plaintiff filed an untimely request for an administrative hearing, but demonstrated good cause for the late filing.

1

On October 31, 2005, Administrative Law Judge Peter Beekman ("ALJ Beekman" or "ALJ") held a hearing on Plaintiff's claims. Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified at the hearing. On March 30, 2007, ALJ Beekman found that Plaintiff was not under a "disability" as defined by the Act, because she was capable of performing a significant number of jobs existing in the economy.

ALJ Beekman's decision became the final decision of the Commissioner when the Appeals Council denied further review. Plaintiff filed an appeal to this Court.

On appeal, Plaintiff claims the ALJ erred (1) in assigning minimal weight to the treating psychiatrist's opinion; and (2) in providing insufficient analysis regarding Plaintiff's sleep apnea.

## II. Evidence

### A. Personal and Vocational Evidence

Plaintiff was born June 23, 1961. (Tr. 55.) She was forty-two years old on her alleged onset date of disability and forty-five years old on the date of the ALJ's decision. Therefore, she is classified as a "younger person" under the Agency's regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a high school education and attended two years of college. (Tr. 70.) Her past work experience is as a collection representative and supervisor. (Tr. 64, 72-80, 482-83.)

### B. Medical Evidence

#### 1. Mental Impairment

Plaintiff began receiving mental health treatment from Dr. Manjula Shah of Community Behavioral Health on September 9, 2004. (Tr. 199-204.) Plaintiff was

diagnosed with major depression, recurrent and generalized anxiety disorder.  (Tr. 215.) Dr. Shah reported that Plaintiff was impaired in concentration and persistence, adaptation, and in reaction to pressure involved in simple and routine repetitive tasks. (*Id.*)  Dr. Shah assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55.[1] (*Id.*)  He prescribed Plaintiff Paxil and recommended counseling and case management. (*Id.*)

Plaintiff visited Dr. Shah next on September 29, 2004.   Plaintiff complained of stress secondary to her employment. (Tr. 211.) Dr. Shah noted that Plaintiff was tearful, agitated, and frustrated.  Dr. Shah noted that Plaintiff's stress was related to the loss of her job in addition to family and financial hardship. (*Id.*)  Plaintiff reported benefitting from Paxil and counseling. (*Id.*)

On March 30, 2005, Dr. Shah indicated on a daily activities questionnaire for the Bureau of Disability Determination that he saw Plaintiff initially on September 9, 2004 and that she was coherent, depressed, and often tearful. (Tr. 199-204.)  He remarked that Plaintiff felt powerless and helpless. (*Id.*)  However, he also noted that her cognitive function was intact that she behaved appropriately. (*Id.*)  He stated that Plaintiff had a good ability to understand remember, and follow directions; that she had a fair ability to maintain attention; and that she was impaired in her ability to sustain concentration, persist at tasks, and complete tasks timely. (*Id.*)  He also indicated that Plaintiff was fair

---

[1]A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

in social interaction, but was impaired in adaptation and reacting to the pressures in work settings or elsewhere. (*Id.*)

On May 9, 2005, Dr. Carl Tishler, a psychologist with the Bureau of Disability Determination completed a psychiatric review technique assessment. (Tr. 243.)  Dr. Tishler opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.  (Tr. 253.)  Dr. Tishler also completed a Mental Residual Functional Capacity Assessment form in which he opined that Plaintiff was moderately restricted in working in coordination with others, completing a normal work day and work week, interacting with the general public, accepting instructions and responding to criticism, and in getting along with co-workers.  (Tr. 239-41.)  Dr. Douglas Pawlarcyzk, a state agency psychologist concurred with Dr. Tishler's assessment on September 23, 2005.  (Tr. 253.)

On August 25, 2005, Plaintiff presented to MetroHealth Medical Center.  She reported that she was feeling well, was taking her medications as prescribed and was less depressed.

On February 10, 2006, Dr. Jolee Gregory of MetroHealth reported that Plaintiff complained of depression.  (Tr. 318.)  On February 24, 2006, Dr. Gregory noted that Plaintiff suffers from depression with components of a social anxiety disorder and anxiety.  (Tr. 329.)

On March 23, 2006, during an office visit with Dr. Gregory, Plaintiff complained of feeling stress from dealings with her caseworker and she discussed the severe stress she experienced from her previous job.  (Tr. 360.)  She described having panic attacks

4

and becoming claustrophobic; however, she stated that the symptoms were not "that bad" since using Paxil.  (*Id.*)

On July 7, 2006, Plaintiff saw Dr. Gregory and complained of increased depression, fatigue, and sleep.  (Tr. 402.)

On December 4, 2006, Dr. Shah reported that Plaintiff was in fear of losing her home and had no income.  (Tr. 442.) He remarked that she was alert and oriented; her speech was spontaneous, though at times pressured; she was tearful when talking about her stressors; her affect was appropriate and consistent with her thinking; she had feelings of helplessness and powerlessness; she was not homicidal or suicidal; her general knowledge was good; and her cognition was intact with her functional memory. (*Id.*)   Dr. Shah diagnosed Plaintiff as suffering from major depression, recurrent with episodic high anxiety, and panic attacks. (*Id.*)  He provided a GAF score of 55.  (Tr. 443.)

On January 4, 2007, Dr. Shah reported that Plaintiff stated she had a good holiday and was slowly losing weight. (Tr. 440.)  He noted that she became overwhelmed at times due to financial difficulties and her inability to work. (*Id.*)  On mental status examination, he remarked that Plaintiff's affect was consistent with her thinking and her behavior was directable.  He assigned a GAF of 55. (*Id.*)

On February 7, 2007, Dr. Shah completed a mental residual functional capacity assessment identifying poor or no ability in the following categories: maintain regular attendance and be punctual, work in coordination with or in proximity to others, deal with work stresses, and complete a normal work day and work week.  (Tr. 445-46.)

5

**2. Sleep Apnea**

On April 20, 2004, Plaintiff reported fatigue, snoring, and waking multiple times at night to her physician. Her physician referred her for a sleep study. (Tr. 181.)

On January 18, 2005, Plaintiff reported snoring, gagging, choking, excessive daytime sleepiness, unrefreshing sleep, and frequent leg jerks. (Tr. 221, 224.)

On May 6, 2005, Plaintiff underwent a sleep study. Based on the study's results, Plaintiff was diagnosed as suffering from mild obstructive sleep apnea. (Tr. 257-58.) It was noted that weight loss is extremely important for long term management of the sleep apnea. (Tr. 258.)

On June 15, 2005, Plaintiff complained of insomnia, loud snoring, frequent leg jerks, sleep disordered breathing, gagging, choking, AM headaches, lack of refreshing sleep, and needing 30 minute daytime naps. (Tr. 297.) Her diagnosis was mild obstructive sleep apnea that was quite symptomatic. (Tr. 299.) A CPAP trial was planned at that point. (*Id.*)

On July 1, 2005, Plaintiff underwent a routine medical examination. She noted that she was continuing to have difficulty sleeping, but her depression was gradually improving. (Tr. 301.)

On August 30, 2005, Plaintiff's sleep apnea was considered to be mild to moderate, her REM was moderately reduced, and she was responding well to CPAP. (Tr. 309.)

On February 10, 2006, it was noted that Plaintiff used a CPAP. Plaintiff stated that the CPAP was helpful and that not using it resulted in frequently falling asleep during the day. (Tr. 318.)

6

On April 5, 2006, Plaintiff reported using her CPAP inconsistently - 3 out of 7 days a week. She was instructed to exercise for weight loss and encouraged to use her CPAP and to go to bed earlier to eliminate naps during the day. (Tr. 358.)

**C.     Hearing Testimony**

Plaintiff testified as follows. She sees her counselor every two weeks and her psychiatrist once a month. (Tr. 467.) She has difficulty sleeping and uses a CPAP machine without good results. (Tr. 467-68.) She does not like to go far from home due to her sleepiness, falls asleep when her sister visits, is always tired, and takes many naps. (Tr. 469, 471-72.) Also, her previous job caused her severe stress and she required medication and counseling.

Dr. Gottfried Spring, M.D., the medical expert at Plaintiff's hearing ("ME"), testified that Plaintiff did not meet or equal a listed impairment for depression or sleep apnea. (Tr. 478-81.) He opined that Plaintiff could perform simple, low stress work with superficial contact with the public, coworkers, and supervisors. (Tr. 481.)

Lynn Smith, the vocational expert ("VE"), identified jobs compatible with the limitations identified by the ME. (Tr. 483.) The VE concluded that the limitations identified by Dr. Shah precluded all work. (Tr. 486.)

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found that Plaintiff's affective disorder and anxiety disorder are severe impairments, but that she did not have an impairment or combination of impairments that meets or medically equals the listings in C.F.R. Part 404, Subpart P, Appendix 1.

8

The ALJ determined that Plaintiff had the residual functional capacity to perform the exertional and nonexertional requirement of basic work-related activities, except for work involving loud noise; more than simple tasks, work involving high stress, high production quotas or piece work; tasks involving supervision of others or the responsibility for the health or safety of another; work involving arbitration, confrontation, or negotiation; work involving more than superficial interaction with the public, co-workers and supervisors; and work involving smoke, odors, or fumes. The ALJ found that considering the Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform. The ALJ concluded that Plaintiff had not been under a disability, as defined by the Act.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI. Analysis

Plaintiff contends the ALJ erred in giving minimal weight to a treating psychiatrist's mental residual functional capacity assessment and in providing insufficient analysis of the limitations of her sleep apnea.

### A.     Weight Assigned to Treating Psychiatrist

Plaintiff asserts that the ALJ improperly assigned the residual functional capacity assessment of Dr. Shah minimal weight.

The opinions of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *See Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048 (6th Cir. 1983). "The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). "However, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (citations omitted), *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

The ALJ is not required to credit a treating physician's opinion that is inconsistent with the physician's previous opinion or with the medical evidence. *See Bogle*, 998 F.2d at 347-48. Nor is the ALJ bound by the opinion of a treating physician who indicates that

the claimant is disabled, when there is substantive evidence to the contrary. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1998) (per curiam). The ALJ need not credit the opinion of a physician on a matter that is not within the physician's field of expertise. *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991) (per curiam).

In the instant action, the ALJ gave minimal weight to Dr. Shah's opinion that Plaintiff is "poor to none" in the following categories: ability to maintain regular attendance and be punctual, working in coordination with or in proximity to others without being unduly distracted or distracting, and dealing with work stresses and completing a normal workday and work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. The ALJ provided the following reasons:

> First, there is nothing in his documentation to support his opinion regarding the claimant's inability to work. He indicated on January 4, 2007, that her general knowledge was good, her behavior was directable and her functional memory was good. The GAF was 55 and she was cognitively intact. In fact, throughout his visits with the claimant, he noted her affect to be appropriate, she had a fair ability to maintain attention and her functional memory was intact. Although the claimant had stressors that impacted her emotions, there was nothing to indicate that she could not sustain work except the claimant's own assertion that she became overwhelmed off and on because of her financial difficulty and her inability to work due to health related problems. However, documentation by Dr. Shah is not consistent with the mental capacity statement that he completed. Furthermore, it is not consistent with other examining physicians in the case record. She reported feeling less depressed on various medical visits and she was noted to be sleeping well on October 2, 2006.

(Tr. 20.)

The ALJ provided detailed reasons for giving minimal weight to Dr. Shah's opinion, including that the opinion was inconsistent with the medical evidence in Dr. Shah's records and inconsistent with the opinions of three examining physicians.

11

Plaintiff argues that "treatment notes reflect deficits in concentration and persistence, adaptation, and in reaction to pressures involved in simple and routine or repetitive tasks." However, these statements appear in a "Daily Activities Questionnaire" for the Rehabilitation Services Commission rather than treatment notes; Dr. Shah opined simply that Plaintiff was "impaired" in these areas and provided no explanation or medical evidence in support of this conclusion. (Tr. 201.)

Plaintiff further maintains that, according to her case manager, Dr. Shah had restricted Plaintiff from participating in any type of unemployment program. However, no medical reason was given for this opinion other than a general diagnosis of depression. Moreover, statements from any medical source that the claimant is "unable to work" are not medical opinions, but rather comments on an issue reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(e); SSR 96-5p. Opinions on issues reserved to the ALJ are given no special significance. *Id.*

Plaintiff also argues that the ALJ "does not take notice of Dr. Gregory, also a medical doctor, who reported plaintiff's depression, with components of social anxiety disorder and anxiety and concluded that Ms. Jackson had not been employed because of her psychiatric diagnoses." Again, Dr. Gregory provides no medical evidence in support of this conclusion other than generally finding Plaintiff to be depressed. Furthermore, as noted before, opinions about a claimant's ability to work are reserved to the ALJ.

Plaintiff also finds fault with the ALJ's reliance on Plaintiff's GAF score of 55 after stating at the hearing that he usually discounts GAF scores. At the hearing the ALJ said that he usually discounts GAF scores because they are merely a snapshot on the day of the assessment. However, the ALJ clarified the reason for not discounting Plaintiff's GAF

12

score of 55:

> Dr. Shah indicated that the claimant's GAF was 55 consistently. I note this on office visits dated September 9, 2005, September 29, 2004, November 15, 2004, December 15, 2004, March 10, 2005, December 4, 2006, and January 4, 2007. This was hardly a 'one shot' evaluation.

(Tr. 21.)

Plaintiff also is critical of the ALJ's reliance on examining expert opinions. However, these opinions simply further bolster ALJ's conclusion that Dr. Shah's opinion was not entitled to full weight. Dr. Tishler, a State Agency psychologist reviewed the evidence on May 9, 2005 and opined that Plaintiff had a mild degree of restriction in her activities of daily living; moderate difficulties in maintaining social functioning; and a mild degree of limitation in maintaining concentration, persistence or pace. (Tr. 253.) Dr. Pawlarczyk, also a State Agency psychologist, concurred with Dr. Tishler's assessment on September 23, 2005. (Tr. 243). Finally, Dr. Spring, the ME, testified that Plaintiff "could do simple, low stress" work with minimal contact with the public, coworkers, and supervisors. (Tr. 481-82.) "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4).

As the ALJ relied on the medical evidence contained in the record that was inconsistent with Dr. Shah's opinion in the residual functional capacity assessment, he provided good reasons for giving minimal weight to that opinion.

13

**B.     Sleep Apnea**

Plaintiff asserts that the ALJ provided insufficient analysis of Plaintiff's sleep apnea.[2] Plaintiff claims that the ALJ failed to "recognize that Ms. Jackson's sleep apnea legitimately resulted in symptoms of insomnia, snoring, gagging, choking, excessive daytime sleepiness, lack of refreshing sleep, frequent leg jerks, fatigue, AM headaches, waking multiple times during the night, and needing frequent daily naps."   However, the ALJ recognized that Plaintiff suffered from mild obstructive sleep apnea, as well as insomnia and daytime fatigue, but noted it was clear through documentation that she was not using her CPAP consistently and that her weight was a contributing factor to her sleep apnea. Despite Plaintiff's testimony to the contrary, medical records reveal that Plaintiff responded fairly well to the CPAP and Plaintiff found it helpful.  (Tr. 309 and 318.)  However, despite the CPAP's help with her sleep apnea, Plaintiff began using it inconsistently, reporting that she was only using it about three days per week.  (Tr. 358.)  As the medical evidence makes clear that the use of the CPAP would help to control Plaintiff's sleep apnea, the ALJ did not err in not identifying limitations beyond those listed in his RFC finding.

---

[2]The Commissioner construes the Plaintiff's argument to be that the ALJ failed to find that her sleep apnea is a severe impairment under the Act.  However, it does not appear to this Court that Plaintiff has actually made such an argument.  Regardless, the Court agrees with the Commissioner's assertion that the ALJ need not make a specific finding that Plaintiff's sleep apnea is a severe impairment where the ALJ found that Plaintiff suffered from the severe impairment of an affective disorder and anxiety disorder.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED  and judgment is entered in favor of the defendant

IT IS SO ORDERED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: October 14, 2008